UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                          :

In re:                                       :        Chapter 11
                                          :        (Subchapter V)
VTES, INC., *et al*.,                   :
                                          :        Case No. 20-12941(JLG)
                                          :
                    Debtors.[1]          :        (Jointly Administered)
                                          :
------------------------------------------------------------X

## DECLARATION OF RAVI PUVVALA IN SUPPORT OF CONFIRMATION OF THIRD AMENDED CHAPTER 11 PLAN OF VTES, INC. *ET AL*., UNDER SUBCHAPTER V OF CHAPTER 11 OF THE BANKRUPTCY CODE

       I, Ravi Puvvala, hereby make this declaration (the "Declaration") pursuant to section 1746 of title 28 of the United States Code and declare that the following is true and correct to the best of my knowledge, information and belief:

       1.       I am older than 21 years of age and suffer no legal disability.

       2.       I am the President and Chief Executive Officer of Savari, Inc. ("Savari") the ultimate parent company and sole owner of VTES, Inc. ("VTES") and Savari Systems Pvt., Ltd. ("SSPL," together with Savari and VTES, the "Debtors"). I have a Bachelor of Science degree from Bangalore University in India and a Master of Science Degree from Arizona State University. I have more than 25 years of experience in the automotive and telecommunications industry, and have worked for numerous startups and Fortune 100 companies in Silicon Valley during my career.

       3.       I respectfully submit this Declaration in support of confirmation of the Third Amended Chapter 11 Plan of Liquidation of the *Third Amended Chapter 11 Plan of VTES,*

---

[1] The Debtors in these Chapter 11 Cases are VTES, Inc., Savari, Inc., and Savari Systems Pvt. Ltd. The last four digits of VTES, Inc. and Savari Inc.'s federal tax identification numbers are 3188 and 9745, respectively. The last four digits of Savari Systems Pvt. Ltd.'s registration number are 8251. The Debtors' mailing address is 2005 De La Cruz Boulevard, Suite 111, Santa Clara, California 95050.

*Inc., et al., Under Subchapter V of Chapter 11 of the Bankruptcy Code* [Dkt. No. 105] (as amended, supplemented, or otherwise modified from time to time, the "Plan"),[2] pursuant to, *inter alia*, section 1129 of title 11 of the United States Code (the "Bankruptcy Code").

4.  Unless otherwise stated, all facts set forth in this Declaration are based upon: (a) my personal knowledge; (b) the Debtors' books and records; (c) information provided by the Debtors' management and professionals; or (d) upon my review of the Declaration of Aileen Daversa on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting the Second Amended Chapter 11 Plan of VTES, Inc. *et al.*, Under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Tabulation Declaration") [Dkt. No. 104].[3] I am authorized to submit this declaration on behalf of the Debtors, and if called upon to testify, I could and would testify competently to the facts set forth herein.

5.  I make the statements in this Declaration after consultation with the Debtors' counsel regarding the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code.[4]

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Plan.

[3] A marked version of the Plan against the Second Amended Chapter 11 Plan [Dkt. No. 65] was filed with the Plan on February 16, 2021 [Dkt. No. 105]. The modifications set forth in the marked version of the Plan are non-material modifications and do not impact the classification or treatment of Claims under the Plan. The Debtors did not receive any objections to the Plan.

[4] Concurrently with the filing of this Declaration, the Debtors filed their Memorandum of Law in Support of Confirmation of the Plan.

## BACKGROUND

### Commencement of The Chapter 11 Cases

6. On December 27, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under subchapter V of chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") with this Court.

7. The Debtors continued to manage and operate their business as debtors in possession pursuant to section 1184 of the Bankruptcy Code.

8. On December 28, 2020, the Office of the United States Trustee for the Southern District of New York appointed Nat Wasserstein of Lindenwood Associates, LLC as the subchapter V trustee (the "Subchapter V Trustee") [Dkt. No. 2].

9. No official committee of unsecured creditors or other statutory committee was appointed in the Chapter 11 Cases.

**Procedural History**

10. On December 31, 2020, the Debtors filed the Plan, as now amended, and the Notice of Presentment of Debtors' Proposed Scheduling Order: (i) for the Plan Confirmation Hearing (the "Confirmation Hearing"); (ii) Setting an Objection Deadline for the Plan; (iii) Approving Form of Notice Regarding Hearing on Plan Confirmation; (iv) Approving Form of Ballot; and (v) Setting a Voting Deadline to Accept or Reject the Plan, as amended (the "Scheduling Order") [Dkt. Nos. 33 and 37].

11. On January 24, 2021, the Court entered the Scheduling Order [Dkt. No. 76], which set the plan objection deadline (the "Plan Objection Deadline") and the Voting Deadline as February 12, 2021 at 5:00 p.m. (Eastern) and scheduled the Confirmation Hearing for February 19, 2021 at 2:00 p.m. (Eastern).

12. Under the Plan, holders of Class 4 - General Unsecured Clams, are the only Class of claimholders entitled to vote on the Plan.

13. On February 1, 2021 the Debtors filed the Plan Supplement, including: (a) the Asset Purchase Agreement, as Exhibit A; (b) the First Amendment to the Asset Purchase Agreement, as Exhibit B; (c) the hypothetical chapter 7 liquidation analysis (Exhibit 1 to the Plan), as Exhibit C; and (d) the Assumption Schedule, including the list of executory contracts and unexpired leases to be assumed and assigned under the Plan and proposed cure amounts (Schedule 9.1 to the Plan), as Exhibit D [Dkt. No. 89].

## CONFIRMATION OF THE PLAN

14. I have worked with the Debtors' Professionals in connection with the wind down of the Debtors' affairs. I participated in the development and negotiation of the Plan. I have reviewed the Plan's terms and provisions, as well as the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code.

15. On the basis of my understanding of the Plan, the events that have occurred throughout the Chapter 11 Cases and after consultation with the Debtors' counsel regarding the various orders entered during the Chapter 11 Cases and the requirements of the Bankruptcy Code, I believe that the Plan fully complies with the applicable provisions of section 1129 of the Bankruptcy Code as required for confirmation.

16. <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1190)</u>. I believe the Plan complies with applicable provisions of the Bankruptcy Code in compliance with section 1190 of the Bankruptcy Code.

17. The "Introduction" section of the Plan contains a brief history of the Debtors' business operations and corporate structure, describes key events which have transpired be-

fore and during the Chapter 11 Cases. Section 4.1 of the Plan refers to Exhibit 1 of the Plan when discussing the liquidation analysis and the Debtors' ability to make payments under the Plan. Additionally, Exhibit 1 to the Plan sets forth the liquidation analysis for the Debtors that provides Holders of Class 4 - General Unsecured Claims are projected to receive an amount equal to 31% of their Allowed General Unsecured Claim – an amount far greater than the Distribution they would receive in a hypothetical chapter 7 liquidation (which contemplates no recoveries to General Unsecured Creditors).

18.     Section 4.2 of the Plan also provides that the Debtors are selling substantially all of their assets and will not continue as a going concern after the closing of the Sale. The Debtors will not have post-Effective Date disposable income over a 3, 4, or 5 year period. Instead, holders of Allowed Claims will receive a lump sum Distribution from the Sale Proceeds and potential supplemental Distributions from Accounts Receivable Payments on the Distribution Date. The Sale Proceeds and Accounts Receivable Payments to be received by the Debtors on the closing of the Sale are evidence of the Debtors' ability to make payments under the Plan; thus ensuring feasibility.

19.     <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1191)</u>. The Plan is fully consensual. I understand, as described in the Tabulation Declaration (including the "Ballot Summary"), that the only Class of Creditors entitled to vote on the Plan, holders of Class 4 - General Unsecured Claims, have voted in favor of the Plan.

20.     <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. I believe the Plan complies with applicable provisions of the Bankruptcy Code in satisfaction of section 1129(a)(1) of the Bankruptcy Code as follows:

- <u>Sections 1122 and 1123(a)(1) of the Bankruptcy Code</u>: Article II of the Plan provides for the separate classification of Claims against, and

Interests in, the Debtors. Each Class of Claims and Interests contains only those Claims and Interests that are substantially similar to each other. Further, I understand that there are valid business, factual and legal reasons for separately classifying each Class of Claims and Interests under the Plan. In addition, the treatment of Claims of the type described in section 507(a)(2) of the Bankruptcy Code ("Administrative Expense Claims") and section 507(a)(8) of the Bankruptcy Code ("Priority Tax Claims") is addressed in Article II of the Plan.

- <u>Section 1123(a)(2) of the Bankruptcy Code</u>: Article III of the Plan sets forth the treatment of each Unimpaired Class of Claims.

- <u>Section 1123(a)(3) of the Bankruptcy Code</u>: Article V of the Plan sets forth the treatment of each Impaired Class of Claims.

- <u>Section 1123(a)(4) of the Bankruptcy Code</u>: Articles II and V of the Plan provide for the same treatment for each Claim or Interest within a particular Class as required under section 1123(a)(4) of the Bankruptcy Code.

- <u>Section 1123(a)(5) of the Bankruptcy Code</u>: Article VII of the Plan provides the means for implementing the Plan. Section 7.2 of the Plan entitled "Implementation of the Plan – Plan Funding Mechanism," Plan Distributions will be funded from $4.5 in Sale Proceeds and Accounts Receivables Payments. Addtiionally, Article VII of the Plan provides the procedures governing the allowance of Claims and Distributions, and the eventual dissolution of the Debtors.

- <u>Section 1123(a)(6) of the Bankruptcy Code</u>: Under Section 7.6 of the Plan, following the Effective Date, the Subchapter V Trustee will wind down the Debtors' affairs through Distribution of all Assets pursuant to the Plan. The Debtors will not be issuing securities. Thus, I understand that the requirement under section 1123(a)(6) of the Bankruptcy Code that the Debtors' organizational documents prohibit the issuance of non-voting equity securities is inapplicable in the Chapter 11 Cases.

- <u>Section 1123(a)(7) of the Bankruptcy Code</u>: The Plan contains only those provisions that are consistent with the interests of Creditors and Interest holders. Because the Plan is a plan of liquidation, it does not provide for the appointment of officers, directors and trustees of the Debtors; instead, the Plan provides for the eventual dissolution of the Debtors, with the Subchapter V Trustee having authority with respect to, *inter alia*, the the wind down of the Debtors, and the collection and Distribution of the Debtors' assets according to the provisions of the Plan.

6

- <u>Section 1123(a)(8) of the Bankruptcy Code</u>: The Plan contains contains numerous discretionary provisions permitted by section 1123(b). Among other things, the Plan provides for the: (a) impairment of certain Claims; (b) rejection or assumption and assignment of executory contracts and unexpired leases; (c) settlement of various Claims and controversies; and (d) release, injunction and/or exculpation of certain parties. *See* Plan at Arts. III, VIII and IX. I understand each of these provisions of the Plan is consistent with section 1123(b) of the Bankruptcy Code and permissible under applicable law.

21. <u>Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. To the best of my knowledge and belief, the Debtors have complied with applicable Bankruptcy Code provisions, the Bankruptcy Rules, and the Scheduling Order in transmitting the Plan, and related documents and notices to known holders of Claims, and in soliciting and tabulating votes on the Plan. To the best of my knowledge and belief, good, sufficient and timely notice of the Confirmation Hearing have been provided to all known record holders of Claims and Interests and all other parties in interest to whom notice was required to have been provided.

22. Additionally, it is my understanding that, based on the Tabulation Declaration, voting on the Plan has been properly solicited and tabulated.

23. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan is the product of arms-length negotiations with the Buyer and the Debtors' secured creditor, and consultation with the Subchapter V Trustee. The result is a Plan that provides for the fair allocation of the Debtors' assets and meaningful recoveries to Creditors, consistent with the requirements of the Bankruptcy Code and other applicable law. The Plan provides the best means for completing the liquidation of the Debtors' remaining assets, winding down the Debtors' affairs, and maximizing the value of the Estates and the return to Creditors. The Plan formulation process was conducted in good faith with all participants in that process represented by experienced and competent counsel.

24. <u>Payments for Services, Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. I understand that section 1129(a)(4) of the Bankruptcy Code requires that payments "for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case," be approved by the Court as reasonable. I further understand that the Plan complies with section 1129(a)(4) because all Professional Fee Claims through the Effective Date remain subject to final review by the Bankruptcy Court under the applicable provisions of the Bankruptcy Code.

25. <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>. It is my understanding that section 1129(a)(5)(A) of the Bankruptcy Code requires the proponent of a plan to disclose the identity and affiliation of any individual proposed to serve as a director or officer of the debtor, or a successor to the debtor, under the plan. I further understand that section 1129(a)(5)(A)(ii) requires that the appointment or continuance of such officers and/or directors be consistent with the interests of creditors and equity security holders and with public policy. I understand that section 1129(a)(5)(B) requires the plan proponent to disclose the identity of any insider that will be employed or retained by the debtor, and the nature of any compensation for such insider.

26. Nat Wassertstein was appointed as the Subchapter V Trustee. To the extent that the Subchapter V Trustee falls within the ambit of section 1129(a)(5), the Subchapter V Trustee has been identified under the Plan.

27. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. I understand that section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Chapter 11 Case because the Debtors are winding down their affairs and not charging rates that are the subject of any regulatory commission jurisdiction.

28. <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. I believe the Plan satisfies the "best interests" test. It is my understanding that the "best interests" test requires that each holder of a claim or interest either accept the plan or receive or retain property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtors were liquidated in a hypothetical liquidation under chapter 7 of the Bankruptcy Code.

29. The liquidation analysis, attached as Exhibit 1 to the Plan, demonstrates that holders of Class 4: General Unsecured Claims are projected to receive under the Plan an amount equal to at least 31% of their Allowed General Unsecured Claim, which far exceeds the any estimated Distribution they would expect to receive in a hypothetical chapter 7 liquidation (in such scenario, no recovery is contemplated for holders of General Unsecured Claims). Based on the liquidation analysis, the holders of Claims in Class 4 – General Unsecured Claims will receive more under the Plan than such Class would receive in a liquidation under chapter 7 of the Bankruptcy Code.

30. <u>Acceptance by All Classes (11 U.S.C. § 1129(a)(8))</u>. Based on my review of the Tabulation Declaration, the sole impaired Class (Class 4 – General Unsecured Claims) voted to accept the Plan. Accordingly, the Plan has an accepting impaired Class of Claims and no Class of Claims is receiving more than it is entitled to receive on account of such Claims, and no Class of Claims or Interests junior to Class 4 will receive any property under the Plan.

31. <u>Treatment of Administrative, Priority Tax Claims and Priority Non-Tax Claims (11 U.S.C. §1129(a)(9))</u>. Under Section 7.9(d), the Plan provides that all Allowed Administrative Claims will be paid in full on the Effective Date, or as soon as practicable thereafter.

32. Pursuant to Section 5.3 of the Plan, except to the extent the Debtors and the holder of an Allowed Priority Tax Claim agree to different treatment, holders of Allowed Priority Tax Claims will receive Cash in an amount equal to such Allowed Priority Tax Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

33. Under Section 5.4(c) of the Plan, except to the extent the Debtors and the holder of an Allowed Priority Non-Tax Claim agree to different treatment, holders of Allowed Priority Non-Tax Claims will receive, on the Effective Date, Cash in an amount not to exceed the amount of such Allowed Priority Non-Tax Claim Code.

34. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. Based on my review of the Tabulation Declaration, Class 4 has voted to accept the Plan without including any acceptance by an insider.

35. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. I believe the Debtors are able to satisfy the conditions precedent to the Effective Date and have sufficient funds to meet their post-Confirmation obligations to pay for the costs of administering and fully consummating the Plan. Specifically, on or imminently following the Effective Date, the Plan contemplates:

(a) payment of any allowed professional fees and expenses of professionals employed by the estate estimated to require approximately $575,000 subject to Bankruptcy Court approval;

(b) payment of Allowed Administrative Claims estimated to require approximately $161,500 (including approximately $143,000 of postpetition employee obligations);

(c) payment of Allowed Priority Tax Claims estimated to require approximately $7,300;

      (d)      payment of Allowed Priority Non-Tax Claims estimated to require approximately, $203,077; and

      (e)      payment of Allowed Secured Claims estimated to require approximately $1,565,000.

36.    Additionally, as set forth in Exhibit 1 of the Plan, the Debtors anticipate paying Distributions of at least thirty-one percent (31%) of Claim amounts on account of Allowed General Unsecured Claims.

37.    The Plan will be funded from the Sale Proceeds and Accounts Receivable, which will equal an amount of no less than $4.5 million. The projections set forth in the liquidation analysis (attached as Exhibit 1 to the Plan) demonstrate that the Debtors will have sufficient proceeds to meet their various obligations under the Plan on or immediately after the Effective Date.

38.    <u>Payment of Fees (11 U.S.C. § 1129 (a)(12))</u>. I understand that section 1129(a)(12) of the Bankruptcy Code requires the payment of certain statutory fees to the Clerk of Court under 28 U.S.C. § 1930. I further understand that no fees and/or costs are owed, or will be owing, to the Clerk of the Court under 28 U.S.C. § 1930.

39.    <u>Termination of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. I understand the Debtors have no pension plans that fall within the scope of section 1129(a)(13) of the Bankruptcy Code.

40.    <u>Domestic Support and Individual Debtors (11 U.S.C. §§ 1129(a)(14) and (15))</u>. Counsel for the Debtors has advised me that sections 1129(a)(14) and (15) of the Bankruptcy Code are not applicable to the Debtors.

41.    <u>Transfers of Property (11 U.S.C. § 1129(a)(16))</u>. Counsel for the Debtors has advised me that section 1129(a)(16) of the Bankruptcy Code is not applicable to the Debtors.

42. <u>Fair and Equitable (11 U.S.C. § 1129(b))</u>.  I understand that Class 5 – Interests will receive no distribution under the Plan, and are therefore deemed to have rejected the Plan.

43. <u>Discretionary Provisions</u>.  I understand that section 1123(b)(1)-(6) of the Bankruptcy Code identifies various additional provisions that may be incorporated into a chapter 11 plan.  The Plan includes certain of these discretionary provisions, which I have determined, with the Debtors' other Professionals, as fiduciaries of the Estates and in the exercise of the Debtors' reasonable business judgment, are appropriate in the Chapter 11 Cases.

44. Among other things, the Plan provides for the:  (a) impairment of certain Claims; (b) rejection or assumption and assignment of executory contracts and unexpired leases; (c) settlement of various Claims and controversies; and (d) release, injunction and/or exculpation of certain parties.  See Plan at Arts. III, VIII and IX.  I understand that each of these provisions of the Plan is consistent with section 1123(b) of the Bankruptcy Code and permissible under applicable law.

**Injunction and Release Provisions**

45. The Plan contains certain releases, execulpation and injunctive provisions, each of which is narrowly tailored and reasonable.  Further, the provisions specifically exclude acts of intentional fraud, willful misconduct or gross neglicgence.  The provisions are critical components of the Plan and appropriate in the Debtors' business judgment.

46. <u>Injunctive Provisions</u>. Under Section 8.4 of the Plan, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtors, their affiliates, the Subchapter V Trustee or any present and former directors, officers, trustees, agents, attorneys, advisors, members, or employees of the Debtors, their affiliates, the Subchapter V Trustee or any of their respective successors or assigns, or any

of their respective assets or properties, on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order with respect to a Claim; (iii) creating, perfecting or enforcing any Lien or Encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation or recoupment of any kind with respect to a Claim, the Assets or other property of the Estates; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan.  Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Cases are closed, from seeking discovery in actions against third parties or from pursuing third party insurance that does not cover Claims against the Debtors.  For the avoidance of doubt, nothing in the Injunction limits the rights of a holder of a Claim to enforce the terms of the Plan.

47. <u>Cause of Action Injunction</u>.  Under Section 8.4(d) of the Plan, all Persons other than the Subchapter V Trustee will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any Claim, debt, right, or Cause of Action that the Subchapter V Trustee retains authority to pursue in accordance with the Plan.

48. <u>Exculpation</u>. Under Section 8.5 of the Plan, neither the Debtors nor the Exculpated Parties shall have or incur any liability to any Person or entity for any action taken or omitted to be taken between the Petition Date and the Effective Date in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Confirmation Order, the Asset Purchase Agreement or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to

13

be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, the Sale, and actions taken or omitted to be taken in connection with the Chapter 11 Cases or the operations, monitoring, or administration of the Debtors during the Chapter 11 Cases; *provided, however*, that such action taken or not taken by such Person or Entity was specifically on behalf of the Debtors and in conjunction with the Chapter 11 Cases, *provided further*, *however* that the Exculpated Parties did not engage in fraud, gross negligence, willful misconduct, or acts performed outside the scope of section 1184 of the Bankruptcy Code not authorized by the Bankruptcy Court.  The Subchapter V Trustee shall have no liability for any action taken or omitted to be taken in connection with or related to the winding down and post-confirmation administration of the Estates, except for (i) fraud, gross negligence, or willful misconduct, and (ii) solely in the case of attorneys, to the extent that such exculpation would violate any applicable professional disciplinary rules, including Rule 1.8(h) of the New York State Rules of Professional Conduct.  I understand that the exculpation provisions under the Plan are consistent with established Second Circuit law and should be approved, as it is limited to protect the actions of certain parties in conjunction with the Chapter 11 Cases and contains an appropriate carve out for intentional fraud, gross negligence, or willful misconduct.

49. <u>Releases by the Debtor.</u> Under Section 8.7 of the Plan, on and after the Effective Date, each Released Party and their respective advisors, attorneys, and Representatives of any professional employed by any of them is deemed released, solely in their capacity in acting on behalf of the Debtors or their Estates, by the Debtors and their Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise,

whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the subject matter of, any Claim or Interest that is treated in the Plan, the negotiation, formulation, or preparation of the Plan, the Confirmation Order, the Sale process, the Purchase Agreement or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors, in connection with the Chapter 11 Cases, *provided, however*, that the Released Parties did not engage in fraud, willful misconduct, or gross negligence, taking place on or before the Effective Date. I believe that the releases contained in Section 8.7 of the Plan are in the best interests of the Estates and represent an appropriate exercise of the Debtors' business judgment.

### Executory Contracts and Unexpired Leases

50. During the course of the Chapter 11 Cases, the Debtors conducted a full review of its executory contracts and unexpired leases. I understand that section 1123(b)(2) of the Bankruptcy Code allows a plan, subject to section 365, to provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously assumed or rejected under section 365 of the Bankruptcy Code. 11 U.S.C. § 1123(b)(2).

51. Pursuant to Section 9.1(a) of the Plan, Schedule 9.1 (the Assumption Schedule) lists executory contracts and unexpired leases (including proposed cure amounts) to be assumed and assigned in connection with the Sale. The Assumption Schedule, was filed with the Bankruptcy Court on February 1, 2021 [Docket No. 89 (Ex. D)] and served on relevant contract counterparties. Section 9.1(b) of the Plan provides for the rejection of all of the Debtors' execu-

tory contracts and unexpired leases to the extent not previously rejected or assumed or have not been assumed and assigned to Buyer pursuant to the Plan.

In light of the foregoing, it is my conclusion and understanding that Confirmation of the Plan is appropriate, is in the best interests of all Creditors and other parties in interest, and satisfies the requirements of the Bankruptcy Code, and, therefore, that the Plan should be confirmed.

I, the undersigned, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed On:     February 16, 2021
                 Santa Clara, California

                                          /s/ *Ravi Puvvala*
                                        Ravi Puvvala
                                        Chief Executive Officer